**E-Filed 1/12/2012**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| JONAS SUGARMAN and QUANG LE, on behalf of themselves and all others similarly situated,<br><br>                       Plaintiffs,<br><br>         v.<br><br>DUCATI NORTH AMERICA, INC.,<br><br>                     Defendant. | Case No. 5:10-cv-05246-JF<br><br>ORDER[1] GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; ADDRESSING OBJECTIONS; AND GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS<br><br>[re: dkt. entries 78 & 80] |

On January 6, 2012, the Court heard (1) the parties' motion for final approval of class action settlement; (2) objections to the proposed settlement; and (3) Plaintiffs' motion for an award of attorneys' fees and costs. The Court has considered the briefing submitted by the parties, the objections submitted by class members, and the oral arguments presented at the hearing. The Court finds and concludes as follows:

---

[1] This disposition is not designated for publication in the official reports.

United States District Court<br>For the Northern District of California

**United States District Court**
For the Northern District of California

# I. MOTION FOR FINAL APPROVAL

On November 18, 2010, Plaintiff Jonas Sugarman ("Sugarman") filed this class action lawsuit against Defendant Ducati North America, Inc. ("Ducati") on behalf of himself and other owners of Ducati motorcycles equipped with plastic fuel tanks.  Sugarman alleged that the plastic used in the fuel tanks was incompatible with motorcycle fuel, and that as a result the tanks degraded and became deformed.  The complaint requested an order requiring Ducati to disclose the existence of the fuel tank defect and associated safety risks, cure the defect, and pay restitution and the attorneys' fees and costs incurred in prosecuting the action.  The operative first amended complaint seeks substantially the same relief and adds Quang Le ("Le") as a named plaintiff.

Plaintiffs assert that the plastic fuel tanks on Ducati motorcycles expand over time, giving rise tothree primary safety concerns:  (1) tanks on certain models leak fuel; (2) the expansion potentially interferes with the full range of steering on certain models; and (3) the expanded tanks could come loose from their front mounting brackets on certain models.  Additionally, certain plastic fuel tanks suffer cosmetic damage such as blistering, bubbling, dimpling, flattening, and spreading.

Ducati asserts that:  its plastic fuel tanks are compatible with fuel sold in the United States; any fuel tank expansion is minimal (a few millimeters) and does not affect rider safety; any problems are limited to a small percentage of its motorcycles; and it has honored its warranty obligations fully.  Ducati filed a motion to dismiss in February 2011, and a motion to stay discovery pending resolution of the motion to dismiss.  The parties subsequently resolved the motion to stay and agreed that certain targeted discovery would be taken immediately.  The hearing on the motion to dismiss was continued a number of times to allow the parties to pursue settlement.  In May 2011, counsel for both sides and their experts met at Ducati's production facility in Italy.  Counsel and experts also conducted three in-depth inspections of putative class members' motorcycles in Florida, Illinois, and California.  The parties subsequently entered into the settlement agreement that now is before the Court.

The proposed settlement provides for relief on behalf of the following class:

> All residents of the United States who, as of September 16, 2011, own any Ducati 2003-2011 Monster, Multistrada, SportClassic, Streetfighter, Superbike or Hypermotard model family motorcycle manufactured with a plastic fuel tank (collectively, "Class Vehicles").

The settlement specifies a number of model and model year motorcycles that would be considered Class Vehicles. There are approximately 39,000 registered Class Vehicles.

The settlement provides for class-wide notice of the fuel tank issue; such notice was effected when the proposed settlement was mailed to class members. The settlement also extends Ducati's standard two-year limited warranty. With respect to non-cosmetic repairs to the plastic fuel tanks, the warranty is extended to six years after the date of original purchase or eighteen months after the effective date of the settlement, whichever is later. Any such repairs will be warranted for twelve months. With respect to cosmetic repairs, the warranty is extended to five years after the date of original purchase or eighteen months after the effective date of the settlement, whichever is later. Any such repairs will be warranted for six months. In the event that a class member transfers title of his or her motorcycle, the extended warranty period is transferable to the new owner. The settlement provides for a dispute resolution process in the event a class member is dissatisfied with repairs provided (or not provided) under the extended warranties. Finally, Ducati has agreed to pay $835,000 in attorneys' fees and costs and $1,500 in service awards to each named plaintiff and to two additional class members who provided declarations and submitted to vehicle inspection.

**A.    Rule 23**

Based upon its review of the record, the Court concludes that the four prerequisites of Fed. R. Civ. P. 23(a) are satisfied: the proposed settlement class includes tens of thousands of people who own Ducati motorcycles with plastic fuel tanks (numerosity); the fuel tanks are subject to the risk of the same alleged expansion defect (commonality); the class representatives are typical of the class in that they own Ducati motorcycles with plastic fuel tanks and assert claims that are reasonably coextensive with those of absent class members (typicality); and the class representatives do not appear to have any conflicts of interest and they have hired capable counsel to protect the interests of the class (adequacy).

**United States District Court**
For the Northern District of California

1   The class also meets the requirements of Fed. R. Civ. P. 23(b)(3), which provides that a class

2   may be certified when "questions of law or fact common to the members of the class predominate

3   over any questions affecting only individual members, and . . . a class action is superior to other

4   available methods for the fair and efficient adjudication of the controversy."  Because the action

5   seeks relief for a common alleged manufacturing defect, common questions predominate.  A class

6   action is superior to other available methods for adjudication of the controversy because joinder of

7   all class members would be impracticable.

8   **B.      Fairness, Adequacy, and Reasonableness**

9   A court may approve a class action settlement only after allowing absent class members to

10   be heard, Fed. R. Civ. P. 23(e)(2), and finding the settlement to be "fundamentally fair, adequate,

11   and reasonable," *Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  Assessing a

12   settlement proposal requires a district court to balance a number of factors:  "(1) the strength of the

13   plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

14   risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5)

15   the extent of discovery completed and the stage of the proceedings; (6) the experience and views of

16   counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to

17   the proposed settlement."  *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir.

18   2004).[2]   The district court also must satisfy itself that the settlement is not the product of collusion

19   among the negotiating parties.  *Id*. at 576.  The issue is not whether the settlement could have been

20   better, but whether it is fair, reasonable, adequate, and free from collusion.  *Hanlon v. Chrysler*

21   *Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

22   The Court finds the settlement in this case to be fundamentally fair, adequate, and

23   reasonable.  Substantial discovery has been taken; interviews with industry personnel and putative

24   class members have been conducted, along with inspection of several affected motorcycles; and

25   Ducati has offered remedies that address in a significant manner the safety and cosmetic concerns of

26   the class.  As noted above, Ducati has filed a motion to dismiss.  The risk to the class posed by this

27   motion, as well as the expense, complexity, and likely duration of further litigation, weigh in favor

28   

---

[2] The parties refer to these factors as the "*Churchill* factors."

United States District Court

For the Northern District of California

of granting final approval.  The Court notes that although Plaintiffs certainly could prevail in litigation, Plaintiffs' counsel has not discovered anyone who actually suffered a personal injury or an accident as a result of the fuel tank expansion.  Accordingly, the notice to class members, extended warranties, and agreed-upon repairs appear to be particularly appropriate remedies for the claims alleged.  Counsel for both sides are experienced in class action litigation, and they have concluded that the settlement is in the best interests of the class as a whole.  There is no evidence of collusion.  Finally, out of the 38,774 class notices sent out regarding the proposed settlement, only twenty-eight[3] class members have opted out, and only forty-two have submitted objections.  The positive response from the class weighs strongly in favor of approving the settlement despite the dissatisfaction of some individuals.  *See Churchill Village, LLC v. General Electric*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming district court's approval of settlement where forty-five of 90,000 class members objected to the settlement, and 500 class members opted out).

## II. OBJECTIONS

The Court received twenty-seven individual objections,[4]  and a twenty-eighth group objection authored by Alexander Bozof and joined by fourteen other class members.[5]   These objections fall into several general categories, discussed as follows:

### A.    Adequacy of Repairs with respect to Safety Issues

A number of objectors express concern that the repairs made available under the settlement will not resolve the safety issues arising from fuel tank expansion.  Class counsel have submitted the opinions of two retained experts, Dr. Anand Kasbekar and Dr. Christopher Scott, who conclude that the proposed repairs are reasonable solutions to the fuel tank safety concerns.  *See* Kasbekar Decl. ¶ 4; Scott Decl. ¶ 7.  Other objectors worry that their fuel tanks will continue expanding indefinitely. Dr. Kasbekar and Dr. Scott opine that the fuel tanks in fact will not expand indefinitely.  *See*

---

[3] Twenty-four individuals filed timely opt-outs.  Another individual, Roger Kinney, attended the hearing and requested a late opt-out at that time, which request was agreed to by Ducati and granted by the Court.  Three additional individuals -- Todd Stephen Corcoran, William Stevens, and Brad Cason – submitted late written requests to  opt-out.  Good cause therefor appearing, these requests also will be granted.

[4]  The twenty-seven individual objections are appended to the declaration of Amy Zeman at exhibit 2.

[5]  Mr. Bozof's objection and the joinders of his fourteen supporters are appended to the Zeman declaration at exhibit 3.

1   Kasbekar Decl. ¶ 5; Scott Decl. ¶¶ 7-11, 23, 31.  Given two expert opinions that the proposed

2   repairs are adequate, and absent any evidence to the contrary, the Court concludes that the proposed

3   repairs will resolve the safety issues upon which this lawsuit is focused.

4      **B.**     **Adequacy of Repairs with respect to Cosmetic Issues**

5         The majority of the objectors assert that Ducati should do more to address cosmetic issues

6   arising out of the fuel tank expansion.  Some objectors call the settlement a "band aid," or a

7   "temporary fix."  Others characterize it as replacing one defective tank with another defective tank.

8   They want Ducati to replace the plastic fuel tanks with other types of tanks that will not expand

9   when they come into contact with motorcycle fuel.  Some objectors suggest metal tanks, while

10  others suggest an interior lining or coating that would act as a barrier between the plastic tank and

11  the motorcycle fuel.  Still others suggest using the plastic formulation used by Ducati in New

12  Zealand, which they claim is not prone to expansion.  Class counsel acknowledge that a new and

13  improved tank would be an ideal solution.  Counsel at one point believed that Ducati was

14  developing an aluminum fuel tank, and hoped that such tank could be substituted for the plastic

15  tanks on the Class Vehicles.  However, although Ducati has designed an aluminum tank for

16  production on three models in the Superbike family, the tank is not suitable for other models.  After

17  investigation, counsel have concluded that most of the motorcycle models covered by the settlement

18  are designed for use only with a plastic fuel tank, and that even if a metal tank could be developed,

19  years of design work and testing would be required to produce a metal tank for those vehicles.

20  Plaintiffs present expert evidence that an interior tank coating would not work particularly well and

21  might wear off over time, introducing problematic foreign substances into the fuel system.  Finally,

22  although Ducati does use different plastic material for its covered tanks in New Zealand, that

23  material does not satisfy United States air emissions standards and accordingly could not be used

24  here.  While it understands class members' frustrations with these cosmetic issues, the Court

25  concludes that the proposed repairs likely are the best practicable options that could be achieved in

26  this lawsuit.

27

28

**United States District Court**
For the Northern District of California

**C.      Length of the Extended Warranty Periods**

Several class members want an extended warranty longer than the six years (safety issues) and five years (cosmetic issues) negotiated by class counsel.  The fact that the settlement could have been better does not mean that it was not fair, reasonable, or adequate.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  Moreover, some of the class members appear to be under the misapprehension that the settlement provides for only a one-year warranty for safety issues and a six-month warranty for cosmetic issues.  These warranty periods apply to new parts used during repair, and they are in addition to the six-year and five-year extended warranties provided under the settlement.  The Court concludes that under the circumstances of this case, the tripling of the warranty period for safety issues and extension of the period for cosmetic issues, combined with the additional warranties on repairs made during these periods, constitute significant benefits to the class.

**D.      Class Counsel's Fees**

One class member asserts that class counsel should be compensated at a rate of only $45.66 per hour because that is what the President of the United States is paid, presuming that the President works 8,760 hours in a year.  The Court has not discovered any legal authority to support this assertion.

Another class member, Mr. Hurley, asserts that class counsel settled the action in an unsatisfactory manner for the purpose of recovering attorneys' fees.  This assertion is belied by the record.  As discussed below, the Court concludes that the requested fees and costs are reasonable.  Moreover, it appears that it was Ducati that sought to resolve the fees issue as a condition to settlement so as to limit its exposure.

**E.      Miscellaneous Objections**

Some class members worry that the settlement will limit Ducati's ability to design better fuel tanks in the future.  The settlement does not contain any such limitation.  Others object that the settlement does not require Ducati to reimburse them for expenses incurred when they decided to apply an epoxy coating to their fuel tanks.  While it does not appear that such coatings are effective in preventing the fuel tank expansion, class counsel did request that Ducati reimburse these

1    expenses, and Ducati refused.  However, at class counsel's urging, Ducati has agreed to an

2    exception to its warranty exclusion for motorcycles that have been repaired with non-Ducati parts or

3    materials.  Thus, owners of motorcycles with coated tanks may take advantage of the extended

4    warranties as long as the coating did not cause the problem for which repairs are sought.

5    **F.      Mr. Bozof's Objections**

6            Objector Alexander Bozof is an attorney who asserts that he has been attempting to get

7    Ducati to address the plastic fuel tank issues for two years.  Although he has threatened to sue

8    Ducati, he never has filed suit.  He actively has solicited class members to object to the settlement in

9    online forums.  He objects that the extended warranties are for too short a period because the

10   expansion symptoms do not occur for two to three years after purchase.  As noted above, the

11   settlement extends the warranties to a minimum of five years after purchase.  He also asserts that

12   ethanol is not responsible for the tank expansion; however, this assertion is not supported by the

13   scientific literature that is appended to his objection, and it is refuted by Plaintiffs' experts.  Mr.

14   Bozof contends that the actual defect is that the fuel tanks absorb water.  Ducati acknowledges that

15   water absorption plays a role in the defect, but it maintains that the underlying problem is caused by

16   the ethanol content in the motorcycle fuel.

17   The settlement addresses the expansion regardless of its cause.  Mr. Bozof asserts that Ducati should

18   be required to design a fuel tank that will not expand at all; as discussed above, this solution is not

19   practicable at this time.  Mr. Bozof also asserts that fuel leaks are not addressed adequately by the

20   settlement; however, the settlement does provide corrective repairs for fuel leaks.  He contends that

21   the balance of the affected motorcycles is upset by the fuel tank expansion; the settlement provides

22   for newly-designed fasteners capable of securing the expanded fuel tanks so that the motorcycles'

23   balance will not be affected by fuel tank shifts.  He claims that the fuel tank expansion, and the

24   proposed repairs for such expansion, destroys the aesthetic of the motorcycle.  The settlement

25   extends warranties for cosmetic issues to a minimum of five years from purchase and applies to any

26   cosmetic irregularities larger than three millimeters.

27           While the Court understands that the aesthetic appearance of  Ducati motorcycles may play

28   a large role in consumers' decisions to purchase them, these solutions appear to be fair compromises

United States District Court

For the Northern District of California

1  between the parties.  Mr. Bozof asserts that an epoxy coating should be used on the tanks; as

2  discussed above, the evidence in the record does not indicate that this would be an appropriate

3  solution.  One of the major epoxy manufacturers, 3M, has questioned the suitability of using such a

4  coating on Ducati's plastic fuel tanks.  *See* Forni Decl. ¶ 13.  Finally, Mr. Bozof asserts that because

5  the approval hearing date was reset from January 17 to January 6, 2012, he could not afford to make

6  travel arrangements from the East Coast to attend the hearing.  However, by the Court's calculation,

7  Mr. Bozof had approximately two months from the time the hearing date was reset to make his

8  travel arrangements.  Mr. Bozof has not shown that this amount of time was unreasonable.

9  Moreover, the Court's website contains information about how parties may appear at hearings

10  telephonically; Mr. Bozof did not seek to take advantage of this option.

11  **G.      Summary**

12        In summary, the Court concludes that the objections do not provide grounds for

13  disapproving the settlement.  Based upon the record, the Court concludes that class counsel

14  negotiated a compromise that addresses class members' primary concerns of notice that the fuel

15  tanks give rise to a safety hazard and the need for repair or replacement of the fuel tanks.  In fact,

16  class counsel present evidence that a number of class members were unaware of the fuel tank

17  expansion issue before receiving notice of the class action settlement; many class members

18  expressed appreciation for the notice and for the settlement.  *See* Zeman Decl. ¶¶ 3-4.  While the

19  settlement does not provide all relief desired by all class members (e.g., development of an entirely

20  new fuel tank made of material that does not expand), the Court concludes that class counsel

21  obtained significant benefits for the class, particularly in light of Ducati's position that it is not liable

22  with respect to any of Plaintiffs' claims.

23                    **III. MOTION FOR ATTORNEYS' FEES AND COSTS**

24        "In a certified class action, the court may award reasonable attorney's fees and nontaxable

25  costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "[C]ourts

26  must first calculate a lodestar amount by multiplying the number of hours reasonably expended on

27  the litigation by a reasonable hourly rate."  *Cunningham v. County of Los Angeles*, 879 F.2d 481,

28

9

484 (9th Cir. 1988).  "Next, the court may increase or reduce the presumptively reasonable lodestar fee" if appropriate.[6]  *Id.*

The total lodestar for all class counsel is approximately $813,000.[7]  Counsel incurred approximately $80,000 in costs.  Consequently, counsel appropriately could request $893,000 in fees and costs, even without applying a multiplier.  Considering this fact, and that class counsel will continue to devote time to this case in the foreseeable future, the proposed figure of $835,000 appears more than reasonable.  The Court recognizes that class counsel assumed substantial risks and burdens in this litigation.  Representation was professional and competent; in the Court's opinion, counsel obtained an excellent result for the class.  There is no suggestion of collusion.  The Court will award attorneys' fees and costs in the requested amount of $835,000.

Courts often award service payments to class representatives in compensation for assuming significant burdens during the litigation, such as retaining counsel, producing documents, responding to written discovery, and conferring with counsel.  *See, e.g., In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 463 (9th Cir. 2000) (approving incentive awards of $5,000 to each of two class representatives in a settlement of $1.725 million).  Ducati has agreed, subject to the Court's approval, to pay $1,500 to each named plaintiff and to Mr. White and Mr. Torres, two class members that contributed significantly to the discovery process.  The Court concludes that the proposed service payments are appropriate.

//

//

//

---

[6] Class counsel assert that because attorneys' fees are sought under California statutes, California law governs this Court's determination whether the requested fees are reasonable.  Mot. for Atty. Fees, p. 3.  It is not clear that California law would apply to an award of attorneys' fees in connection with settlement of a federal class action lawsuit.  However, the Court need not resolve this issue, as California utilizes the same two-step lodestar analysis discussed above.  *See In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556-57 (2009).

[7] This figure is amply supported by the declaration of Eric Gibbs.  In particular, paragraphs 15-26 describe how the case was staffed, the hourly rates of each attorney and litigation assistant who worked on the case, and the tasks that were performed.  The litigation is broken up into two-month intervals, with details provided regarding the specific tasks performed during each interval.  Paragraph 27 provides a chart of litigation expenses incurred, and paragraphs 28-35 provide factual and legal support for the hourly rates charged by each member of the litigation team.

**IV.  ORDER**

Good cause therefor appearing, IT IS HEREBY ORDERED that:

(1)      the motion for final approval of the class settlement is GRANTED;

(2)      the objections to the settlement are OVERRULED;

(3)      the motion for attorneys' fees and costs is GRANTED in the amount of $835,000; and

(4)      the request for payment of service awards is GRANTED in the amount of $1,500 to each of

the following individuals:  Sugarman, Le, White, and Torres.

DATED:  1/12/2012                                      _____

JEREMY FOGEL
United States District Judge

**United States District Court**
For the Northern District of California

11